IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

v.                                            No. CIV-02-1644 JB/RHS

BCI COCA-COLA BOTTLING COMPANY
OF LOS ANGELES, d/b/a PHOENIX COCA-
COLA BOTTLING COMPANY and COCA-
COLA  BOTTLING COMPANY OF
ALBUQUERQUE,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Opposed Motion to Dismiss Claims Due to Lack of Subject Matter Jurisdiction.  The issue is whether the Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), fulfilled the statutory prerequisites that permit it to bring this action.  Because the Court concludes that the scope of the EEOC's case is broader than the charge, the EEOC's Letter of Determination, and the conciliation efforts, the Court grants the motion to dismiss the claims contained in paragraph 7(a) of the Complaint that do not involve the terms and conditions of employment contemporaneous with or immediately before the termination.

## FACTS AND CASE HISTORY

BCI Coca-Cola Bottling Company of Los Angeles ("BCI") terminated Charging Party Stephen Peters ("Peters") on October 2, 2001[1].  Peters filed an employment discrimination charge

---

[1] BCI styles its motion as one under rule 12(b)(1) of the Federal Rules of Civil Procedure. "[E]xhaustion is jurisdictional in this circuit." Welsh v. City of Shawnee, 1999 U.S. App. LEXIS

with the EEOC on October 11, 2001, alleging discrimination based on his race, African American, in violation of Title VII of the Civil Rights Act of 1964.  <u>See</u> Charge of Discrimination ¶ III.  Peters alleged that BCI discriminated against him when it fired him from his job, which he had held for over six years.  <u>See</u> <u>id.</u> at ¶ II.  Peters also compared his allegedly unlawful treatment by BCI to that of "non-African Americans," whose treatment by BCI was different, less harsh.  <u>See</u> <u>id.</u> at ¶ II.

Specifically, Peters charged:

I.      STATEMENT OF HARM: I was employed with the Respondent for approximately six and one-half years when I was <u>terminated</u> from my position on October 2, 2001.

II.     RESPONDENT'S ACT, POLICY OR PRACTICE ALLEGEDLY RESULTING IN DISCRIMINATION: The reason given for my <u>termination</u> was insubordination.  I had been scheduled to work for what was usually my day off.  Because I called in sick that day I was told it was insubordination for not coming in.  This was the first time I called in sick in six and one-half years.  Other non African-Americans call in sick two to three times a month or do not even call in (no-call, no-show), and they are not <u>terminated</u>.

<u>Id.</u> at ¶¶ I, II (emphasis added).

The EEOC investigated Peters' allegation of discrimination.  During the investigation, the EEOC requested from BCI evidence related to Peters' allegations.  The information requested included information related to "non-African Americans" and the discipline that BCI imposed for various infractions.

The information that BCI provided included information about an employee whom BCI had

---

11251, *7 n.2 (10th Cir. June 1, 1999)(citing <u>Jones v. Runyon</u>, 91 F.3d 1398, 1399 & n.1 (10th Cir. 1996).  BCI attached the Charge and Letter of Determination as exhibits to its motion; the EEOC then referred to both exhibits.  Both parties, thus, submitted or referred the Court to, materials that were outside the pleadings.  All material facts can be found in written documents that are of public record.  The parties have not pointed the Court to any issue of material fact in their briefing, nor argued that the Court could not or should not decide the issues raised herein because of lack of discovery or because of factual issues.

hired in October 1999. This particular employee's discipline history with BCI provided in part support for the EEOC's eventual finding in this case. Upon concluding the administrative investigation of Peters' charge, the EEOC issued its Determination on August 5, 2002.

The EEOC's Determination included findings of disparate treatment in the terms and conditions of employment and discriminatory discharge. The letter summarized the EEOC's investigation and findings in this matter. See EEOC Letter of Determination at 1 (issued Aug. 5, 2002). First, the letter set forth Peters' allegations: "The Charging Party alleges that the Respondent engaged in an employment practice made unlawful by Title VII when he was terminated from his employment on October 2, 2001." Id. (emphasis added). The EEOC discussed BCI's response: "Respondent denies the allegation and has maintained that Charging Party was terminated for insubordination after being directed by the District Sales Manager to work an overtime schedule on a scheduled day off." Id. (emphasis added). The letter then described the EEOC's investigation results:

> The Commission's investigation revealed that Respondent's contention that Charging Party was terminated for insubordination is not well founded. The investigation revealed that Charging Party notified Respondent prior to his scheduled day off that he would be unable to work due to illness. Based on its investigation, the Commission concludes that similarly-situated, non-African American employees were not subjected to the same terms and conditions of employment as Charging Party and were not discharged from employment as Charging Party was.

Id. (emphasis added). The finding in the Determination was that:

> Based on this analysis, I have determined there is reasonable cause to believe Respondent has violated Title VII of the Civil Rights Act of 1964, as amended, when it subjected Charging Party to disparate treatment in the terms and conditions of his employment and discriminatory discharge because of his Race, Black (African American).

Id..

3

The EEOC invited BCI to participate in conciliation. A conciliation conference was held on or about August 25, 2002. BCI's representative participated in the conciliation conference.

The conference focused exclusively upon the facts, circumstances, and alleged motivations surrounding Peters' termination. The EEOC did not, formally or informally, at any time during the administrative pendency of this matter, notify BCI of its intention to seek redress for any alleged violations other than the termination. The parties did not resolve the dispute, and the EEOC provided appropriate notification to BCI.

The EEOC filed its Complaint fifteen months after the acts that gave rise to the cause of action. The EEOC brought this case pursuant to Title VII of the Civil Rights Act of 1964. See Complaint (filed Dec. 30, 2002). Paragraph 7 of the Complaint states:

> 7.   Since at least October 1999, Defendant engaged in unlawful employment practices at its Albuquerque, New Mexico facility, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a). These practices include:
>
>   a.   disparate treatment of Stephen B. Peters in the terms, conditions and privileges of his employment, including, threatening Mr. Peters with harsh discipline for not working a scheduled day off, failing to apply progressive discipline policies to Mr. Peters, and applying different attendance standards to Mr. Peters because of his race, African American; and
>
>   b.   discharging Stephen B. Peters because of his race, African American.

Complaint, ¶ 7, at 2-3 (emphasis added).

BCI contends that it was surprised to read paragraph 7(a) of the Complaint in this case, in which the EEOC alleges, for the first time, that BCI engaged in disparate treatment of Peters with respect to the terms and conditions of his employment "since at least October 1999." Complaint ¶ 7, at 2. The EEOC asserts these "terms and conditions" allegations as distinct grounds for relief in this action, separate and apart from the wrongful termination claim. See Complaint ¶¶ 8-10 and

4

Prayer for Relief ¶¶ D-F, at 3 and 4.  The EEOC also contends in its Complaint that "all conditions precedent to the institution of this lawsuit have been fulfilled."  Complaint ¶ 6, at 2.

## BURDEN OF PROOF

The EEOC has the burden of proving compliance with Title VII's conditions precedent.  See Dinkins v. Charoen Pokhand USA, Inc., 133 F. Supp. 2d 1237, 1241 (M.D.Ala. 2001.  See also Wright v. Olin Corp., 697 F.2d 1172, 1177 (4th Cir. 1982)(rejecting as insufficient a "vague and conclusory" stipulation that the EEOC complied with "administrative and procedural requirements of Title VII material to this action and with all conditions precedent to bringing this action" and requiring that each claim be the subject of a cause determination).

## PREREQUISITES TO EEOC CIVIL ACTION

Congress has entrusted to the EEOC the primary responsibility for enforcing Title VII.  See EEOC v. Shell Oil Co., 466 U.S. 54, 61-62 (1984).  The Supreme Court of the United States has explained EEOC's enforcement procedure as follows:

> In its current form, Title VII sets forth "an integrated, multistep enforcement procedure" that enables the Commission to detect and remedy instances of discrimination. (internal citation omitted).  The process begins with the filing of a charge with the EEOC alleging that a given employer has engaged in an unlawful employment practice. . . . [The statute] require[s] the Commission to "serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on [the] employer . . . within 10 days" of the filing of the charge. 42 U.S.C. 2000e-5(b). . . . After a charge has been filed, the EEOC conducts an investigation of the allegations contained therein. . . .  If, after completing its investigation, the EEOC determines that there is "reasonable cause to believe that the charge is true," it must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."  2000e-5(b).  If those methods prove ineffectual,  the Commission is empowered to bring a civil action against the employer.  2000e-5(f)(1).

EEOC v. Shell Oil Co., 466 U.S. at 62-64.  Subsequent amendments to Title VII did not alter these

procedures. There are, therefore, a number of conditions precedent to the EEOC bringing a lawsuit:

> Conditions precedent for the EEOC to file a lawsuit include: (1) filing with the Commission of a timely charge of discrimination at least 30 days before the suit is filed; (2) notice of the charge served on the Respondent; (3) an investigation of the charge; (4) a determination by the Commission that reasonable cause exists to believe that the charge is true; (5) an attempt by the EEOC to eliminate the unlawful employment practices by informal methods of conference, conciliation and persuasion; and (6) inability of the Commission to secure from the Respondent a conciliation agreement acceptable to the EEOC.

EEOC v. Premier Operator Servs., Inc., 75 F. Supp. 2d 550, 562 (N.D. Tex. 1999) (internal citations omitted). These separate stages are important to the statute's enforcement structure because of the different roles that the EEOC plays in the management of discrimination charges: administrator, investigator, mediator, and, finally, enforcer.

In the course of this procedure, a "reasonable cause" determination is important:

> The statute directs the EEOC to notify the respondent of the charge within 10 days, to investigate the charge, and to determine "as promptly as possible . . . whether there is reasonable cause to believe that the charge is true." 42 U.S.C. § 2000e-5(b). If the EEOC finds no reasonable cause, then it must dismiss the charge. *See id.* If the EEOC finds reasonable cause, then it must attempt to resolve the dispute "by informal methods of conference, conciliation, and persuasion." *Id.* "If within thirty days after a charge is filed . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against . . . [the] respondent . . . ." *Id.* 2000e-5(f)(1).

Martini v. Federal Nat'l. Mortgage Ass'n, 178 F.3d 1336, 1340 (D.C. Cir. 1999). It is the determination that there is a "reasonable cause" that initiates the conciliation process and opens the door to suit by the EEOC if conciliation fails.

If "reasonable cause" is found, the EEOC must pursue conciliation. "If the EEOC finds reasonable cause to believe discrimination occurred, it must endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."

EEOC v. Frank's Nursery & Crafts, Inc., 177 F.3d 448, 455 (6th Cir. 1999)(internal quotation marks and citation omitted).  Thus, "Congress established that the EEOC may only file suit if it has been unable to secure a conciliation agreement[.]"  EEOC v. Hearst Corp., 103 F.3d 462, 468-69 (5th Cir. 1997).  And entry into the conciliation process is in turn dependent on a finding of "reasonable cause."  Id.

"[E]ach step in the Commission's administrative process is designed to be a prerequisite to the following step and, ultimately, to suit."  EEOC v. American Nat'l Bank, 652 F.2d 1176, 1185 (4th Cir. 1981)(internal quotation marks and citation omitted).  Numerous courts have addressed the importance of a reasonable cause determination and conciliation as prerequisites to suit by the EEOC.  As the United States Court of Appeals for the Ninth Circuit has stated:

> The Commission's functions of investigation, decision of reasonable cause and conciliation are crucial to the philosophy of Title VII.  It is difficult to believe that Congress directed the Commission to make a determination of reasonable cause on the merits of a charge and nevertheless contemplated that the Commission could institute such litigation before it makes such a determination.  Similarly, it is difficult to conclude that Congress directed the Commission to conciliate and then authorize it to initiate adversary proceedings before the possibility of voluntary compliance has been exhausted.  Genuine investigation, reasonable cause determination and conciliation are jurisdictional conditions precedent to suit by the EEOC.

EEOC v. Pierce Packing Co., 669 F.2d 605, 608 (9th Cir. 1982).

Courts have read Title VII to "require that a particular charge of discrimination be the subject of the reasonable cause determination and conciliation before being subject to suit by the EEOC." EEOC v. American Nat'l Bank, 652 F.2d at 1186.  See EEOC v. Motorola, Inc., 468 F. Supp. 857, 859 (N.D. Ill. 1987) (holding that conditions precedent to suit will not have been met unless the EEOC has exhausted the possibilities of conciliation "with respect to each issue it seeks to litigate"); EEOC v. Sherwood Medical Indus., Inc., 452 F. Supp. 678, 684 (M.D. Fla. 1978) (holding that,

where EEOC's investigation exceeds the scope of the charging party's charge of discrimination, but EEOC fails to include its additional findings in its reasonable cause determination and conciliation efforts, its suit on these additional matters is premature).  There are important reasons that the employer should be on notice of the charges against it:

> This requirement, for example, protects an employer charged in the reasonable cause determination with race discrimination in hiring against being surprised by a subsequent suit including charges of race discrimination in layoffs or promotion, or sex discrimination.  There would have been no prior notice to the employer that practices relating to these charges were suspect nor an opportunity for the employer to remedy the problems out of court.

EEOC v. American Nat'l. Bank, 652 F.2d at 1186.  "[T]he reasonable cause and conciliation prerequisites [are] necessary to provide notice of the specific *practice* the EEOC had determined to be unlawful – hiring, layoff, promotion, etc. – not just the *manner* in which the EEOC had determined the employer's practices to be unlawful – discrimination, harassment, retaliation, etc."  EEOC v. American Home Prods. Corp., 165 F. Supp. 2d 886, 909 (N.D. Iowa 2001) (emphasis in original)(citing American Nat'l. Bank, 652 F.2d at 1185).

## THE EEOC DID NOT EXHAUST THE ADMINISTRATIVE PROCESS BEFORE FILING SUIT

Any subsequent lawsuit is limited to allegations of discrimination that the EEOC develops in the course of a reasonable EEOC investigation of that charge.  See General Tel. Co. v. EEOC, 446 U.S. 318, 331 (1980), EEOC v. Wal-Mart Stores, Inc., 1999 U.S. App. LEXIS 33144, *11 (10th Cir. Dec. 21, 1999)("Judicial consideration of claims 'not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made.'") (quoting Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1416 n. 7 (10th Cir. 1993)).  While it is true that the scope of the

EEOC's investigation is not limited to the specific facts presented in the charge, the EEOC's power to sue depends upon ascertainment of a violation, i.e., upon a "reasonable cause" determination that a violation has occurred. See EEOC v. Waffle House, Inc., 193 F.3d 895, 810 (4th Cir. 1999)(citing General Tel. Co. v. EEOC, 446 U.S. at 331), rev'd on different grounds, 534 U.S. 279 (2002); EEOC v. Delight Wholesale Co., 973 F.2d 664, 668-69 (8th Cir. 1992)("The original charge is sufficient to support EEOC action, including a civil suit, for any discrimination stated in the charge or developed during a reasonable investigation of the charge, so long as the additional allegations of discrimination are included in the reasonable cause determination and subject to a conciliation proceeding.")(citing EEOC v. Brookhaven Bank & Trust Co., 614 F.2d 1022, 1025 (5th Cir. 1989)).

The employer must have notice that there are other charges. The Determination Letter here does not give BCI reasonable notice that the EEOC would pursue anything other than the discharge claim and the terms and conditions of employment in the immediate timeframe of the termination.

In EEOC v. American Home Products Corp., the court addressed a situation similar to that presented here. The EEOC attempted to bring an enforcement action based upon claims outside the scope of its reasonable cause determination of retaliatory discharge. The court refused to permit the EEOC to sue on a claim of retaliation with respect to stock options, despite that the EEOC charge had been amended to include this allegation and that the EEOC had investigated the additional allegation. See 165 F. Supp. 2d at 910. The court based its decision upon the fact that the reasonable cause determination made no mention of retaliatory assignment of stock options, but referred only to a finding of retaliatory termination:

> Here, the EEOC found reasonable cause as to only one practice, retaliatory termination. The EEOC cannot "parlay" that reasonable cause determination into satisfaction of the prerequisites for suit with regard to other practices, involving

9

>post-termination retaliation, without a separate "reasonable cause" determination as
>to the additional allegations of retaliation.

Id. at 912 (emphasis in original).

Similarly, in this case, the statute does not permit the EEOC to use its specific and limited reasonable cause determination of discriminatory termination to bring suit on all acts of discrimination allegedly committed by BCI against Peters over a two year period before his termination. Peters did not file any charge encompassing any alleged discriminatory incident other than his termination, nor did the EEOC reach a determination regarding other allegedly discriminatory acts.

When an EEOC investigation, reasonable cause determination, and conciliation have actually taken place, as in this case, the subsequent litigation is limited to the actual scope of those events. See National Ass'n of Government Employees v. City Pub. Serv. Bd. of San Antonio, Texas, 40 F.3d 698, 712 (5th Cir. 1994). See also EEOC v. Continental Oil Company, 393 F. Supp. 167, 171 (D. Colo. 1975) (noting that EEOC's finding of reasonable cause determines the proper scope of an employment discrimination action). Rather than searching for any support whatsoever in the Letter of Determination, the Court is obligated to review the material facts set forth in the Charge of Discrimination and the Letter of Determination that the EEOC issued to determine whether the EEOC has met the conditions precedent. Peters' charge of discrimination relates solely to his termination, listing a single date for the alleged discriminatory conduct -- October 2, 2001, the date of the termination. See Charge of Discrimination ¶ I. The charge makes no reference to any prior alleged discriminatory treatment by BCI. He did not file any other charge encompassing any alleged discriminatory incident other than his termination.

The Letter of Determination contains no specific reference to any alleged discriminatory

incidents or discriminatory conduct by BCI other than the alleged wrongful discharge. The Letter did not address or reasonably suggest that the EEOC's investigation revealed further violations, other than the termination, occurring in the two years before Peters' discharge. See Cheeks v. Western & Southern Life Ins. Co., 31 F.3d 497, 503 (7th Cir. 1994)("Ordinarily, a claim for sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination."). The entire thrust of the conciliation effort was to resolve the discriminatory termination charge, not events going back to 1999.

The process could have dealt with both sets of allegations at the same time, but the parties did not deal with the separate allegations regarding the terms and conditions of Peters' employment during the two years prior to his discharge. Both Peters and the EEOC had opportunities during the administrative pendency of this matter to amend the charge or the Letter of Determination. They did not do so. Conciliation in the manner and form that Congress contemplated occurred for the termination claim and for the claim regarding the terms and conditions of employment immediately surrounding that termination, but not for anything else. The Court should therefore not consider the distinct claims of discrimination before the termination set forth in paragraph 7(a) unless and until the EEOC completes the statutory prerequisites with respect to such claims.

During the administrative pendency of this litigation, the EEOC, by its Letter of Determination, represented to BCI that any enforcement action undertaken in this matter would be limited to the alleged discriminatory discharge. EEOC representatives did not reasonably alert BCI to the possibility that litigation might encompass additional, separate acts of alleged discrimination dating back as far as two years before the termination. BCI may have relied upon the EEOC's representations regarding the scope of the matter at issue in making decisions regarding conciliation.

11

Evidence or connections with witnesses necessary to the defense of this action that might have been more easily secured before this litigation may no longer be available. Congress has entrusted the EEOC with the responsibility to be aware of the ramifications of failing to genuinely and fully disclose an intended cause of action to a respondent during conciliation of a charge that it has selected for judicial enforcement.

The EEOC correctly contends that the Letter of Determination contains general language that is arguably consistent with the Complaint filed in this action. The Determination included a terms and conditions finding, as well as discriminatory discharge finding. <u>See</u> EEOC Letter of Determination (stating that BCI "subjected Charging Party to disparate treatment in the terms and conditions of his employment . . . ."). The EEOC based its terms and conditions finding on the EEOC's investigation of Peters' allegation in the EEOC charge. Peters' Charge of Discrimination does not address, however, events well before termination, <u>see</u> Peters' Charge of Discrimination, and so this allegation in the Determination, if it is meant to convey something different from the discriminatory discharge, would be a new allegation. The more reasonable interpretation would be that the Determination's finding relates -- not to events two years before the termination -- but to terms and conditions contemporaneous or near in time to the termination.

The EEOC did not properly place BCI on notice of the additional claims, as Title VII requires. BCI therefore did not have an opportunity to investigate and assess such claims or to conciliate such claims before litigation. The EEOC did not exhaust the administrative process and cannot maintain claims for which it did not meet the prerequisites for a lawsuit.

### **THE EEOC DOES NOT COME UNDER THE EXCEPTION FOR RELATED CLAIMS**

The EEOC acknowledges that the exhaustion of administrative remedies is a jurisdictional

prerequisite to bring suit under Title VII. See Response at 3 ("[E]xhaustion of remedies is a jurisdictional prerequisite to bring suit under Title VII . . . ."). While the EEOC does not necessarily concede that it failed to exhaust its remedies as to discrimination before the termination, it primarily relies on an exception to the congressional prerequisites. See id. at 3 ("[T]here is an exception to [the exhaustion of administrative remedies] prerequisite.")(citing Elke Dunlap v. State of Kansas Department of Health & Environment, 2001 U.S. Dist. LEXIS 13711, *4-5 (D. Kan. 2001)).

The United States Court of Appeals for the Tenth Circuit has recognized this exception[2]:

> This Court has adopted a limited exception to the exhaustion rule for Title VII claims when the unexhausted claim is for "discrimination like or reasonably related to the allegations of the EEOC charge." Ingels [v. Thiokol Corp.], 42 F.3d [616,] 625 [(10th Cir. 1988)](quoting Brown v. Hartshorne Pub. Sch. Dist. No. 1, 864 F.2d 680, 682 (10th Cir. 1988)). See Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997), cert. denied, 522 U.S. 935 . . . (1997). "However, where a retaliatory act occurs prior to the filing of a charge and the employee fails to allege the retaliatory act or a retaliation claim in the subsequent charge, the retaliatory act ordinarily will not reasonably relate to the charge." Id. (emphasis added); see also Hopkins [v. Digital Equip. Corp.], 1998 U.S. Dist. LEXIS 15762, 1998] WL 702339, at *3 [(S.D.N.Y. Oct. 8, 1998)].

Simms v. Oklahoma, 165 F.3d 1321, 1327 (10th Cir. 1999)(finding that all of the plaintiff's

---

[2]The United States Court of Appeals for the Tenth Circuit in Welsh v. City of Shawnee declined to decide whether the scope of a reasonable EEOC investigation is a separate exception from the exhaustion rule or simply a part of the process for determining what allegations are reasonably related to claims stated in the charge. The United States Court of Appeals for the Seventh Circuit takes the latter view. See Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)(holding that claims not expressly stated in charge may be considered exhausted where "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.")(emphasis added). This Court does not read the Tenth Circuit cases as creating a separate exception to Congress' mandated exhaustion rule and agrees with the Seventh Circuit's formulation of the single exception. In EEOC v. Wal-Mart, the Tenth Circuit referred to "a" limited exception, discussed the "reasonably related" exception, and then quoted Martin v. Nannies and the Newborns, Inc., 3 F.3d at 1416 n.7. The EEOC states it is relying on the "reasonably related" exception and does not argue that there are two exceptions with different elements, instead treating the cases as creating one exception.

13

allegations of pre-1995 retaliation concerned facts occurring before the filing of the second EEOC complaint and that the plaintiff does not qualify for the "reasonably related" exception). See Welsh v. City of Shawnee, 1999 U.S. App. LEXIS 11251 at *11 (holding that exhaustion exception did not save claims; "[c]laims falling within the reasonably related exception generally arise after another claim has been filed, but here, all of the acts of harassment occurred prior to the filing of Welsh's charges.").[3]

The Tenth Circuit has emphasized the limits of the exception. Its use appears primarily to bring in claims arising subsequent to an EEOC charge, not to events occurring before the EEOC charge. See Seymore v. Shawver & Sons, 111 F.3d at 799-800 (finding that the plaintiff failed to exhaust administrative remedies on the retaliation claim because she was aware of the facts constituting that claim at the time of her EEOC filing.); Aramburu v. Boeing Co., 112 F.3d 1398, 1409-10 (10th Cir. 1997)(finding hostile work environment claims were not reasonably related to wrongful discharge claim, which was the only claim listed in the original EEOC discrimination charge). The Tenth Circuit has not previously applied this exception to find claims not stated in the charge, but based on facts known before the charge was filed, to be "reasonably related" to claims actually delineated in the charge. This Court is reluctant to expand the limited exception to Congress' exhaustion rule any more than the Tenth Circuit has indicated it will go and will not do so under these circumstances. This conclusion eliminates the need to make fuzzy and sometimes difficult decisions

---

[3] These Tenth Circuit cases involved individual plaintiffs. The Tenth Circuit has also applied the exception when the EEOC was the plaintiff. See EEOC v. Wal-Mart Stores, Inc., 1999 U.S. App. LEXIS 33144 (10th Cir. Dec. 21, 1999)(applying exception to save "improper inquiry" claim in case brought under the Americans with Disabilities Act for "failure to hire" because the "improper inquiry" claim was necessarily reasonably related to the "failure to hire" claim where the inquiry was the asserted basis for the failure to hire).

whether the unexhausted claim for discrimination is like or reasonably related to the allegations in the administrative charge. The Court should not consider claims that arose before the charge that are not necessarily and reasonably included in an EEOC charge, Letter of Determination, and conciliation process. Even where additional claims are likely or reasonably related to the claims asserted in the original charge, and could be reasonably expected to grow out of the investigation of the original charge, there should nonetheless be a determination of reasonable cause as to these claims and the opportunity for conciliation before the EEOC may include those claims in the suit. See American Home Prods. Corp., 165 F. Supp. 2d at 909.

In addition, while the Court is reluctant to take on the task of trying to decide what is reasonably related to the allegation of discriminatory discharge, even if the limited "reasonably related" exception applies to events occurring before the charge, it is unavailable here. All claims set forth under Title VII against a single employer may not be related to one another. The allegations in paragraph 7(a) are not specific and may involve separate, discrete acts of discriminatory conduct occurring as long as two years before the termination. See Welsh v. City of Shawnee, 1999 U.S. App. LEXIS 11251, *10 ("Because her harassment claims are based on completely different allegations from her gender discrimination claims, the two types of claims are not reasonably related."); Aramburu v. Boeing Co., 112 F.3d at 1409-10 (holding that hostile work environment claim was not reasonably related to wrongful discharge claim contained in EEOC charge where claims were based on different allegations of impermissible conduct.).

BCI contends that the management and supervisory chains of command of the facility where Peters worked changed during this two-year period. BCI contends other employees at the facility where Peters worked have left BCI's employ since 1999. It is unclear whether the discriminatory acts

15

described in paragraph 7(a) involved the same individuals who participated in the termination decision. See Cheek v. Western & Southern Life Ins. Co., 31 F.3d at 501 (holding that, for claim to be reasonably related, EEOC charge and judicial complaint "must, at a minimum, describe the same conduct and implicate the same individuals.")(emphasis in original). Given the lack of specificity of the allegations in paragraph 7(a), BCI may not be able to defend itself now -- without some prejudice -- against what may be stale claims.

If the EEOC intends to rely on an exception to the exhaustion requirement, it must establish that the two claims are related. The EEOC has not met its burden of establishing that all the claims set forth in paragraph 7(a) are reasonably related to Peters' wrongful termination claim. There is no evidence that permits this Court to reasonably conclude that these alleged discrete acts of discrimination are related to one another or to the termination. That these issues were not raised during the administrative pendency of this matter supports the conclusion that the alleged occurrences are not related to the termination. Accordingly, the Court will dismiss claims for terms and conditions of employment that did not occur temporally with the discharge.

By doing so, the Court does not question that the EEOC's investigation of an employee's unlawful termination will necessarily, at times, include an inquiry whether the employer treated the employee differently as compared to similarly situated employees. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)(setting forth burden-shifting analysis for Title VII discrimination claims; discrimination proved by a showing that charging party is a member of a class protected by Title VII, that the charging party was qualified or performing his/her position satisfactorily, that the charging party was terminated; the charging party must then refute the defendant's nondiscriminatory reason for termination, by putting forth evidence such as similarly situated employees were treated

differently.).  If the EEOC discovers during its investigation of the charge that there are other forms of discrimination "reasonably related" to the initial charge, the EEOC may proceed with claims beyond those claims in the initial charge.  The subject matter of an EEOC charge may be enforced beyond the actual words of the charge.  In considering the treatment of similarly situated employees and considering the treatment of the charging party, it would logically follow that the EEOC could find that the employer treated the charging party differently from the similarly situated employees and, therefore, the EEOC could make a finding that the investigation revealed disparate treatment in the terms and conditions of employment in addition to unlawful termination from employment.  "It is beyond peradventure that the scope of the civil action is not cabined by the original complaint.  Instead, the employee's complaint provides EEOC with a 'jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices.'" Dinkins v. Charoen Pokphand U.S.A., Inc., 133 F. Supp. 2d at 1245 (citations omitted).  Moreover, "[t]o determine whether an allegedly discriminatory action falls within the scope of the claim, the administrative complaint must be construed liberally in order to further the remedial purposes of applicable legislation and a plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." McMahon v. Henderson, 2001 U.S. Dist. LEXIS 9236, *11 (D. Neb. 2001).  But once new acts of discrimination are discovered, they must be meaningfully part of the charging, determination and conciliation process.  That was not done here.

This holding also does not bar the EEOC from litigating the events asserted as the basis for Peters' termination – whether BCI threatened Peters with harsh discipline for not working on the scheduled day for which he was fired, for failing to apply progressive discipline policies to Peters for

17

calling in sick on that day, and for applying different attendance standards to Peters because of what he did that day. Those terms and conditions of employment are properly at issue. The Court's holding does, however, prohibit the EEOC from pursuing further claims into as-yet unspecified discriminatory conduct in the terms and conditions of Peters' employment before the events on which his termination was based.

**WHEREFORE, IT IS ORDERED** that the Defendant's Opposed Motion to Dismiss Claims Due to Lack of Subject Matter Jurisdiction is granted and the claims contained in paragraph 7(a) of the Complaint that do not involve the terms and conditions of employment contemporaneous with or immediately before the termination are hereby dismissed.

_____
James O. Browning
United States District Judge

Counsel:

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Mary Jo O'Neill
C. Emanuel Smith
Phoenix District Office
Phoenix, Arizona

Veronica A. Molina
Loretta F. Medina
Albuquerque District Office
Albuquerque, New Mexico

*For Plaintiff*

MILLER & MARTIN, LLP

E. Todd Presnell
Kara E. Shea
Nashville, Tennessee

MOODY & WARNER, P.C.
Christopher M. Moody
Albuquerque, New Mexico

*For Defendant*